JOHN W. BROWN, Appellant, *v.* JONAS FISHEL, Respondent, Impleaded with Others.

*Intention of the parties to a conveyance, determined by the jury — judgment not reversed on the facts, unless the case contains all the evidence.*

It is for the jury, upon the trial of an action in which the question as to the boundary line of a lot of land is in dispute, to determine whether the parties to a deed, in which the premises conveyed were described as bounded by the line of a street, intended to refer to the visible and apparent line of the street, or to the line of the laid out and recorded highway.

A judgment will not be reversed upon the facts by the General Term of the Supreme Court, if there is no certificate in the case that it contains all the evidence.

APPEAL by the plaintiff, John W. Brown, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Suffolk on the 1st day of November, 1892, upon the verdict of a jury rendered after a trial at the Suffolk Circuit dismissing the plaintiff's complaint upon the merits, and also from an order made at the Suffolk Circuit on the 28th day of October, 1892, denying the plaintiff's motion for a new trial made upon the minutes.

*H. H. Benjamin,* for the appellant.

*George F. Stackpole* and *Wilmot M. Smith,* for the respondent.

BROWN, P. J.:

This action was brought to recover possession of a small plot of ground in the village of Riverhead, Suffolk county. The plaintiff, concededly, has title to a lot upon the north side of Main street and extending north seventy-five feet from the north line of that street.

The defendant Fishel has title to a lot immediately north of plaintiff's land and bounded on the south by the plaintiff's north line.

The question in dispute is the proper location of the north line of plaintiff's lot.

Both parties derive title from John Benjamin. In 1857 Benjamin conveyed to his daughter, Frances Maria Brown, a lot of land seventy-five feet deep and bounded " on the south by the Main street, seventy-four and one-half feet."

The plaintiff is a son of Frances Maria Brown, and makes his title under the aforesaid conveyance.

In 1886 Benjamin conveyed to the defendant Fishel a parcel of land in the rear of the lot conveyed to his daughter, and being of the same width of said lot north and south, and bounded on the south by " land of the heirs of Frances Brown, deceased."

Main street was first laid out in 1748, and in 1814 it was resurveyed by the commissioners of highways of the town and recorded as a highway.

At the date of the deed to Mrs. Brown, as I understand the evidence, there was no fence in front of the property conveyed to her, but there was in front of the property adjoining upon the east, and which was owned by the Congregational Church, and east of that the property was fenced along the street. There was also a fence in front of the Jagger property on the west, and west of that property the land along the street was fenced, or buildings were erected right up to the line which would be a continuation of the fence line. This condition of the street had existed for a period that was beyond the memory of any living witness. At the date of the deed to Mrs. Brown, therefore, the street was open and used, and was the principal thoroughfare of the village. Its apparent north line was well marked and was an actual visible monument, and the plaintiff's claim was that the fence line was the north line of the street, and that the north line of his lot was to be ascertained by measuring seventy-five feet north from the fence line.

In further support of this view the plaintiff's father testified that in 1859 he was present with Benjamin and assisted in taking a measurement of the lot conveyed to his wife, made with reference to the erection of a building thereon. That they started on the north side of Main street, at the fence in front of the Congregational Church, and ran north seventy-five feet, then squared the corner and ran south.

After that measurement was made Benjamin erected a building on the lot for his daughter, and the front of it was about ten or twelve feet from the fence line.

The defendant Fishel produced the records of the street as laid out and recorded by the commissioners of highways.

The north line ran from a stone buried in the ground near the old court house, upon a designated course in an easterly direction, to a stone in the ground near what is now the southeast corner of the Methodist Church.

Mr. Howell and Mr. Post, who were civil engineers and surveyors, testified to ascertaining and surveying that line. They claimed to have located the stones at the ends of the recorded line of the street by digging and removing the dirt. The line of the street, as ascertained and located by them, was about ten or twelve feet south

of the apparent or fence line of the street. There would appear to be very little doubt but that the stone monument near the court house was properly located by the surveyors, but there was some doubt about the monument near the Methodist Church, and the course run by the surveyors between those two points did not correspond to the course given in the record of the street. The explanation for this discrepancy was the variation in the compass since 1814 and local attraction of the needle, the cause of which was unknown. There was other evidence upon the part of the defendant Fishel tending to show that the real line of the street, as laid out and recorded, was south of the fence line, and his claim was that the north line of the street as laid out was the southern boundary of the plaintiff's lot, and its depth was to be ascertained by running north from that line. Between the line run by the surveyors and the fence line was the sidewalk, which was about six feet wide, then a row of trees, and then a part of the traveled roadbed, and the distance between these lines represents the width of the lot in dispute, measured from north to south.

Upon this evidence we are of the opinion that the case was for the jury. The court properly refused to direct a verdict. It could not determine, as a question of law, either the line of the street or the intention of Benjamin and his daughter in making the street the southern boundary of the lot. These were questions of fact solely.

We are of the opinion, however, that the real question to be submitted to the jury to determine was what was the intention of Benjamin and his daughter in making the street the southern boundary of the property. Did they refer to the line which was visible and apparent, or did they refer to the line of the laid out and recorded highway? Upon the evidence there was much that could be said in the way of argumennt upon both sides of this question.

But it nowhere appears that either Benjamin or his daughter had any knowledge or had ever heard that the lines of the street as actually used did not correspond to those of the recorded highway; and as grants of land are presumed to be made and boundaries fixed after a view of the premises, we are of the opinion that the weight of evidence in the record before us was decidedly upon the side of the plaintiff's contention.

The intention to convey a lot of land, seventy-five feet deep, is

clear, and it is difficult to believe that any part of the lot was understood to be within the open visible street. The line of the street had been fixed so long, and the public use of the land as a street up to the fence line had been so open and notorious, that there was strong ground for the claim that, if not within the recorded line of the street, it had been dedicated to public use by the owners, and, if that was the fact, there could be little doubt that in making the street the southerly boundary of the lot in question, the reference was to the street as actually used and not to the mathematical line of the recorded highway.

The question of the intention of the parties to the deed in making the street the boundary of the property was not submitted to the jury by the court, and there was no request to submit it. The jury were instructed to determine as a fact where the line of the highway was, and if they found that it was as fixed by the surveyors, then to render a verdict for the defendant.

We are precluded from reversing the judgment upon the facts, for the reason that there is no certificate in the case that it contains all the evidence, and we are compelled to affirm the judgment.

But, as the case is one in which the statute provides that a new trial may be had at the plaintiff's election, we have endeavored to point out what we consider to be the questions upon which the controversy turns, so that if there should be another trial it might be submitted to the jury.

The judgment must be affirmed.

DYKMAN, J., concurred; CULLEN, J., not sitting.

Judgment and order affirmed, with costs.